UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANINE JANSMA, next friend
of T.J., *et al.*,

       Plaintiffs,

   v.

GRAND RAPIDS POLICE
SGT. OSTOPOWITZ, *et al.*,

       Defendants.
_____/

Case No. 1:05-CV-489

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Defendants' Motion for Summary Judgment on Counts II, III, IV and VI pursuant to Federal Rule of Civil Procedure 56. In light of the briefing, the Court discerns no reason for oral argument. W.D. MICH. LCIVR 7.2(d).

**I.     BACKGROUND**

This action arises from an execution of a search warrant at Plaintiffs' home in Grand Rapids. Plaintiffs allege that as a result of the search, Plaintiff Janine Jansma's arm was wrenched, causing her wrist to break in several places. Despite Plaintiffs' assertion that most of the material facts are in dispute, it appears from the record Plaintiffs and Defendants offer the same story, differing only on the issues of how exactly Janine Jansma's wrist was broken and the validity of the information leading to the search warrants.

A.     The First Search

On June 26, 2003, Grand Rapids Police Officer Amanda Johnson responded to a call regarding three youths smoking marijuana at an elementary school. (Mot., Ex. 3.) Officer Johnson determined the three boys had been smoking marijuana. (*Id.*) The boys informed the officer that

Jesse Jansma sold them the marijuana. Officer Johnson was familiar with Jesse Jansma who had been arrested for possession of marijuana previously. (*Id*.) Vice officer Keith Hefner also came to the scene and conducted an investigation. (*Id*.) Later that day, Officer Hefner prepared and submitted an affidavit for a search warrant for Jessie Jansma's home, 854 Hazen S.E., Grand Rapids. (Mot., Exs. 3 & 4.) The warrant was approved and interpreted as "high risk" because it involved illegal drugs. (Mot., Ex 5.)

Officer Hefner then met with Sargent John Keelan of the Grand Rapids Police Department Special Response Team ("SRT") to request assistance in executing the warrant. (*See* Mot., Ex. 6, Section 3-91D1, SRT has "responsibility for all high-risk tactical operations to include . . . high-risk search warrants . . .). At 10:48 p.m., SRT arrived at the address and executed the search warrant on 854 Hazen S.E. Plaintiff Jelta Jansma saw the police officers approaching his house and opened the door for them. (Mot., Ex. 7, Jelta Jansma Dep. 11:20-12:1.) Both Jelta and Janine Jansma complied with orders to get on the floor and Janine was handcuffed at one point. (Mot., Ex. 8, Janine Jansma Dep. 41:12.) Upon searching the house, the officers seized: finger scales and a marijuana pipe in Jelta and Janine's bedroom; a marijuana pipe, two cigarette boxes with marijuana and rolling papers in the living room; two ziplock bags of marijuana, three bags with blue pills, torn plastic bags, a marijuana pipe and finger scales in a basement bedroom; and a loaded .357 Magnum revolver wrapped in a purple towel from under the basement stairs .[1] (Mot., Ex. 9.) The gun was subsequently determined to be stolen. (Mot., Ex. 10.) Colin Jansma was searched and $750 dollars seized from his person. (Mot., Ex. 11.)

---

[1]Also discovered during the search but not seized were Jelta Jansma's hunting rifle and shotgun which were stored under his bed. (Jelta Dep. 27:2; Janine Dep. 45:1.)

B.     Second Search

On August 11, 2003, Officer Todd Butler went back to the Jansma residence and instituted a trash pull in response to a complaint that the drug activity at the house had not ceased.[2] In the trash taken from the Jansma household, Officer Butler discovered mail; twelve sandwich bags with missing corners, a corner of a sandwich bag containing marijuana and marijuana stems, and several nitrous canisters, balloons and a huffing device. (Mot., Ex. 13.) Based on these items, the citizen's complaint and the recent search warrant, Officer Butler submitted an affidavit for a second search warrant for the Jansma residence on August 13, 2003. (Mot., Ex. 14.) Officer Butler requested that "due to the presence of a stolen handgun during the June 26 search warrant, it is imperative for the safety of the officers making entry to limit the time between knock/announce and entry to the residence." (*Id*.) The warrant was granted. (*Id*.)

The warrant was executed on August 13, 2003, and SRT was again involved in the execution of the warrant. (Resp., Ex. C.) Jelta and Janine Jansma, who were naked in their bedroom, did not hear the officers announce themselves and only became aware of their presence as they came up the stairs towards the bedroom. (Mot., Ex. 7, Jelta Dep. 4:1-8 & Ex. 8, Janine Dep. 75:23-76:9.) Defendants claim they announced their presence with a bullhorn before entering the house through the open front door. (Mot., Ex. 19, Ostapowicz Dep. 39:2-4 & 41:12.) Officers yelled "search

---

[2] The Court notes Officer Butler's deposition, cited in support of this statement, is not attached to Defendants' Exhibit 12. Plaintiffs also apparently tried to attach Officer Butler's testimony in the forfeiture trial as Exhibit H; however, Exhibit H is in fact copies of state court judgments. The Court finds Exhibit J is Officer Butler's testimony in which he testifies that there was a complaint regarding Plaintiffs' residence after the first search warrant was executed. (Resp., Ex. J at 8.)

warrant" and "get down on the floor" upon entering the Jansma's bedroom.[3] (Mot., Ex. 8, Janine Dep. 76:7-20; Ex. 7, Jelta Dep. 18:11.) Both Jelta and Janine Jansma testified that in response to the officers' directions, they repeatedly screamed "Get the fuck out of our house" and "go ahead and shoot us." (Mot., Ex. 8, Janine Dep. 77; Ex. 7, Jelta Dep. 18-21.) Janine also called the officers "a bunch of perverts" and "absolutely refused" to follow the order to get down on the ground. (Mot., Ex. 8, Janine Dep. 78:6, 88:4.) Sargent Matthew Ostapowicz[4] radioed for a security team member to come up to the second floor because the Plaintiffs would not get on the floor. (Mot., Ex. 19, Ostapowicz Dep. 42:1-7.)

At this point, Defendants and Plaintiffs offer differing accounts of Janine Jansma's "take down." Defendants claim Officer Dennis Newton reached out and grabbed Janine by her left arm and pulled her toward the foot of the bed. (Mot., Ex. 19, Ostapowicz Dep. 44: 22 & Ex. 15, Newton Dep. 20:12.) Jelta was holding on to Janine by the waist at the time. (Mot., Ex. 7, Jelta Dep. 40:21.) Janine was forced to the ground and handcuffed and covered in a sheet. (Mot., Ex. 15, Newton Dep. 25:23-28.) Plaintiffs argue that while Officer Newton grabbed Janine's left wrist and pulled her, Sargent Ostapowicz grabbed her right arm and pulled her out of Officer Newton's grasp. (Mot., Ex. 7, Jelta Dep. 23-27.) Officer Newton then kicked her legs out while Sargent Ostapowicz pushed her down. (*Id.*) It is undisputed Janine's wrist broke in two places.

---

[3] Two bags of marijuana were on the bedside table at the time of this confrontation and Jelta admits to having smoked it earlier in the night. (Mot., Ex. 7, Jelta Dep. 31:3.)

[4] The Court notes Defendant Matthew Ostapowicz's name was misspelled in the Complaint. The Court shall use the correct spelling evidenced by Defendants' Briefs and his deposition. (*See* Mot., Ex. 19.)

C.   Outcome

After the search, Jelta Jansma pled no contest to possession of marijuana in Kent County Circuit Court in exchange for the dismissal of the other two charges against him. (Mot., Ex. 1.) The charges were also subsequently dropped against Janine Jansma because Jelta claimed the marijuana seized.[5]  Charges of Hindering and Opposing were brought in the 61st District Court and were dismissed against both Plaintiffs. (Reply at 4.)  There was also a forfeiture action instituted against Plaintiffs in Kent County Circuit Court.  The Judge found in favor of the State as to Count One, holding Plaintiffs' house was a nuisance as defined by Michigan Complied Law § 600.3801 and in favor of Plaintiffs on Count Two and denied the State's request that Plaintiffs forfeit their interest in their home. (Mot., Ex. 17 at 2).

In July 2005, Plaintiffs filed this suit pursuant to 42 U.S.C. § 1983 claiming Defendants Matthew Ostapowicz, Dennis Newton, Todd Butler, Thomas Bush, David Gillem, and Patrick Harig used excessive force to search Plaintiffs' home and arrest Plaintiffs.  Plaintiffs also assert a claim against Defendants Ostapowicz, Newton, Butler, Gillem, Bush and Harig pursuant to § 1983 for unlawful seizure of Plaintiffs in Count II.  Counts III and IV assert common law claims of false arrest, imprisonment and malicious prosecution against Defendants Ostapowicz, Newton, Butler, Gillem, Bush, and Harig.  Count V alleges a loss of consortium against all Defendants.  Plaintiffs also allege damage to personal property in Count VI against Defendant Jonathan Wu.  Defendants have moved to dismiss Counts II, III, IV and VI.

---

[5]The Court notes that although Plaintiffs appear to rely on Exhibit L to show Janine Jansma's charges and dismissal, no such Exhibit exists.

**II.     LEGAL STANDARD**

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in [its] favor."  *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies its burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial.  *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990).  The non-moving party may not rest on its pleading but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252.  "The 'mere possibility' of a factual dispute is not enough,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the submission of *de minimis* evidence.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

**III.  ANALYSIS**

A.  Jelta Jansma, Count II

Defendants have moved for summary judgment on Count II, Jelta Jansma's claims of unlawful seizure in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983, on the basis of *Heck v. Humphrey*, 512 U.S. 477 (1994) which bars plaintiffs from advancing claims under § 1983 which, if successful, "would necessarily imply the invalidity" of a prior conviction or sentence. *Id*. at 487.  Defendants argue this claim fails as a matter of law because *Heck* bars Plaintiffs from bringing it.  The Supreme Court stated in *Heck*,

> [i]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, 18 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 486-87.  If, however, "the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit."  *Id*.

In the instant case, Jelta pled "no contest" to possession of marijuana, pursuant to Michigan Complied Law § 333.7411, and pursuant to a plea agreement the other two charges against him were dismissed.  (*See* Mot., Ex. 1.)  There is no dispute this charge arose from the execution of a search warrant which is the basis of the instant action.  Plaintiffs assert unlawful seizure or false arrest under § 1983 and this claim rests upon the allegation that Jelta was arrested or detained without probable cause in violation of the Fourth Amendment.  *Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995) ("Probable cause to make an arrest exists if the facts and circumstances within the arresting

7

officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'") (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  Under Michigan law, any conviction, unless unfair or procured by fraud, is conclusive evidence of probable cause.  *See Blase v. Appicelli*, 489 N.W.2d 129, 131 (Mich. App. 1992).  Therefore, a finding in Plaintiffs' favor under § 1983 would necessarily invalidate the state court conviction and would be barred pursuant to *Heck*.

Jelta however never pled guilty nor was he adjudicated guilty.  Jelta pled no contest pursuant to § 333.7411 and as a result there is no bar under *Heck*.  Section 333.7411 states

> When an individual . . . pleads guilty to or is found guilty of possession of a controlled substance . . . the court, without entering a judgment of guilt with the consent of the accused, may defer further proceedings . . . Upon fulfillment of the terms and conditions, the court shall discharge the individual and dismiss the proceedings.  Discharge and dismissal under this section shall be without an adjudication of guilt.

Mich. Comp. Law § 333.7411.  There is legal precedent in finding a no contest plea can bar a subsequent § 1983 claim under *Heck*.  *See Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005); *Schreiber v. Moe*, 445 F. Supp. 2d 799, 812-13 (W.D. Mich. 2006); *Ramirez v. Dennis*, 2002 U.S. Dist. LEXIS 10436, *11-13 (W.D. Mich. June 6, 2002) (listing authorities).  However, none of these cases contemplate a no contest plea which is subsequently discharged without an adjudication of guilt at the end of the probationary period as is the present circumstance.  If the probation period has expired and Jelta's charge has been discharged, there would not be a conviction such that *Heck* could be invoked.  Therefore, where Jelta's plea has been expunged with no adjudication of guilt or a conviction,[6] *Heck* cannot bar his claim under § 1983.[7]

---

[6]The Court notes neither Plaintiffs nor Defendants have argued or shown Jelta Jansma has had his no contest plea discharged under the statute.  However, Plaintiffs have vaguely asserted

B.     Probable Cause

Defendants argue Counts II, III, and IV should be dismissed for the reason that the issue of probable cause for arrest has been adjudicated in a state court in an adversarial proceeding such that collateral estoppel precludes Plaintiffs from relitigating the issue. *See Allen v. McCurry*, 449 U.S. 90 (1980). The Sixth Circuit has held where "the state affords an opportunity to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 claim." *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) (*overruled on other grounds by Frantz v. Village of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001)); *see also Russo v. City of Warren*, 1995 U.S. App. LEXIS (6th Cir. May 5, 1995) (applying collateral estoppel after preliminary examination which determined issue of probable cause to bar § 1983 claim and state law claims for false arrest, false imprisonment and malicious prosecution).

In the instant case and as a result of the execution of the second warrant, Plaintiffs were charged with maintaining a drug house in violation of Michigan Complied Laws § 333.7405(d). Michigan sets forth that a preliminary examination shall be held in all felony criminal cases to determine whether a felony has been committed and whether probable cause exists to charge the

---

there "is no conviction" and taken in a light most favorable to Plaintiffs, the Court assumes Jelta's conviction was expunged upon completion of the probationary period.

[7]For these same reasons, Defendants' argument that Jelta is estopped from claiming constitutional false arrest and common law claims of false arrest, false imprisonment, malicious prosecution must fail. Jelta's no contest plea subsequently discharged his conviction and was without an adjudication of guilt. Therefore, there is no judgment or prior adjudication upon which to base the argument for estoppel.

defendant with the felony. MICH. COMP. LAWS § 766.13; MICH. CT. RULE 6.110; *See also King v. City of Grand Rapids*, 2006 U.S. Dist. LEXIS 91581 *28 (W.D. Mich. Dec. 19, 2006). In the preliminary hearing both Plaintiffs, through their attorneys, contested the issue of probable cause. (Mot., Ex. 19, Tr. of Prelim. Hr'g.) The Magistrate Judge determined after weighing arguments on the record that there was probable cause to support binding both Jelta and Janine over for trial on the charges. (*Id*. at 49-51.) Plaintiffs' claims of constitutional false arrest and common law claims of false arrest, false imprisonment and malicious prosecution all require a *prima facie* showing of the absence of probable cause. *See Pyles*, 60 F.3d at 1215 (reasonable cause needed for false arrest claim under § 1983); *Lewis v. Farmer Jack, Inc.*, 415 Mich 212, 218 (1982) (holding a plaintiff must show an arrest was not based on probable cause to succeed on a claim of false arrest or false imprisonment); *Matthews v. Blue Cross & Blue Shield*, 456 Mich. 365, 378 (1998) (holding plaintiff has the burden of showing "the prosecution lacked probable cause for his action.") Accordingly, Plaintiffs' claims must fail as a matter of law where the issue of probable cause was actually litigated in state court. *See Coogan*, 820 F.2d at 175. Therefore, the Court finds Plaintiffs claims under Counts II, III, and IV fail as a matter of law and summary judgment is appropriate.

In the alternative, the Court notes Plaintiffs' unlawful seizure claim under § 1983 would also fail on its merits.[8] It is undisputed that Plaintiffs' screamed profanities at Defendants and refused to comply with orders they understood. Plaintiffs also admit to physically struggling against Defendants as they tried to handcuff Plaintiffs. Therefore, by their own admissions, Plaintiffs

---

[8]The Court does not express an opinion as to the merits of the state law claims because Defendants did not argue the issue in its Motion.

verbally and physically resisted lawful commands in violation of Michigan Complied Law § 750.81(d). *See People v. Vasquez*, 465 Mich. 83, 96-98 (2001).

To the extent Plaintiffs appear to argue their claim should survive because the second search warrant was the result of "misinformation," this argument is without merit or substantiation. Plaintiffs do not allege this fact in their Complaint nor does Plaintiffs' argument have any legal support or substantiation in their Response. Plaintiffs allege Defendant Butler provided misleading and false information in his affidavit to procure the second affidavit, but it is uncontested that the affidavit was based on the evidence from the trash pull. Plaintiffs admit they placed the items at issue in the trash. (Resp. at 3.) Plaintiffs further assert Defendant Butler testified falsely at the forfeiture trial that there were many complaints made regarding Plaintiffs. (Resp. at 7.) However, it appears from the record Defendant Butler testified to the opposite, stating "In 2003, I – I had a citizen complaint regarding the house." *See supra* n.2; (Resp., Ex. J at 8.) Plaintiffs also argue Defendant Butler failed to comply with procedures for gaining a valid warrant; however, Plaintiffs do not allege any facts which support this or specify what procedures he failed to follow. Plaintiffs further assert Defendant Gillem provided false information that led to the first search warrant and "but for the bad information from Officer Gillem, the events would not have been put in motion." (Resp. at 8.) However, it is uncontested the information leading to the first warrant originated from Officer Amanda Johnson and the affiant was Officer Keith Hefner, not Defendant Gillem. Plaintiffs have completely failed to allege any facts connecting Officer Gillem to either search warrant or explain how he contributed "false information" or "misinformation" which invalidated the second search warrant at issue in this action. Moreover, despite Plaintiffs asserting Defendant Gillem falsely testified there were multiple complaints about Plaintiffs' home, Defendant Gillem testifed to the

11

opposite. (Resp., Ex. I at 6.) Plaintiffs have also failed to submit any records which substantiate this claim. Therefore, even viewed in a light most favorable to Plaintiffs, there is no genuine issue as to any material fact concerning Plaintiffs' claim that Defendants obtained the search warrants by false information. Accordingly, summary judgment as to the § 1983 claim is appropriate.

C.   Count VI

Plaintiffs allege in Count VI, Damage to Personal Property, that Defendant Jonathan Wu damaged Jelta Jansma's truck while parking a Grand Rapids Police Department dog handler truck. Defendants move for summary judgment on this issue asserting Plaintiffs have failed to show Defendant Wu owned the vehicle or was operating it at the time the damage occurred. Defendants also argue Plaintiffs have failed to file a proper claim against the owner and insurer of the vehicle as required under Michigan Complied Law § 500.3121(1) and failed to file within the one-year statute of limitations pursuant to Michigan Complied Law § 500.3145(2).

The Court recognizes that Plaintiffs have admitted they "have no idea" if Defendant Wu was the driver of the truck. (*See* Mot., Ex. 7, Jelta Dep. 40:7 & Ex. 8., Janine Dep. 145:15.) Plaintiffs also failed to respond to Defendants' arguments; indeed, Plaintiffs do not make any arguments concerning Defendant Wu or Count VI in their Response. *See United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not this court's responsibility to research and construct the parties' arguments.") As stated previously, once the movant satisfies its burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer*, 912 F.2d at 153-54. Plaintiffs have failed to come forward with any facts or argument that a genuine issue of material fact exits as to Count VI. Therefore, summary judgment is appropriate.

**IV.    CONCLUSION**

Therefore, the Court will grant Defendants' Motion for Summary Judgment as to Counts II, III, IV and VI.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>April 13, 2007 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |